**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

THE BANK OF NEW YORK MELLON fka
Bank of New York Mellon *as* Trustee for the
Certificateholders of CWALT, Inc., Alternative
Loan Trust 2005-54CB, Mortgage Pass-Through
Certificates Series 2005-54CB

        Plaintiff,

      v.

HAROLD HILL, an individual;
ENCHANTMENT AT SUNSET BAY
CONDOMINIUM ASSOCIATION; 732
HARDY WAY TRUST; and NEVADA
ASSOCIATION SERVICES, INC.,

        Defendants.

Case No. 2:17-cv-01916-RFB-EJY

**ORDER**

**I.     INTRODUCTION**

Before the Court are three motions: 732 Hardy Way Trust's motion to dismiss, ECF No. 34;

732 Hardy Way Trust's motion for summary judgment, ECF No. 37; and The Bank of New York

Mellon's renewed motion for summary judgment, ECF No. 38.

**II.     PROCEDURAL BACKGROUND**

Bank of New York Mellon sued defendants and filed a notice of lis pendens on July 13,

2017.  ECF Nos. 1, 4.  This matter was stayed on March 23, 2018, pending the Nevada Supreme

Court's decision on a certified question, which was later answered in SFR Investments Pool 1,

LLC v. Bank of New York Mellon, 422 P.3d 1248 (Nev. 2018).  ECF No. 29.  The stay was lifted

/ / /

on August 23, 2018. ECF No. 33. The Clerk of the Court entered default against Defendant

Nevada Association Services, Inc. ("NAS") on September 26, 2018. ECF No. 41.

Hardy Way now moves to dismiss the complaint, ECF No. 34, and moves for summary

judgment, ECF No. 37. Both motions were fully briefed. 42, 43, 45, 47. Bank of New York

Mellon also moves for summary judgment. ECF No. 38. The motion was also fully briefed. ECF

Nos. 44, 46, 48, 49. The Court held oral arguments on the motions on July 18, 2019. ECF No. 55.

### III.    UNDISPUTED FACTS

The Court finds the following facts to be undisputed. Harold Hill obtained a loan from First

Community Mortgage to purchase the property at 732 Hardy Way #F, Mesquite, Nevada. The

loan was secured by a deed of trust that was recorded in 2005. In November 2013, the note and

the deed of trust were assigned to Bank of New York Mellon.

The property is subject to the covenants, conditions, and restrictions ("CC&Rs") of the

Enchantment at Sunset Bay Condominium Association (the "Association"). The Association

recorded the CC&Rs, which state in part: "Notwithstanding any other provisions of this

Declaration, no amendment or violation of this Declaration shall operate to defeat or render invalid

the rights of the Beneficiary under any Deed of Trust…."

After Hill failed to timely pay homeowners' association dues to the Association, the

Association, through its agent Nevada Association Services ("NAS"), began a nonjudicial

foreclosure process under Nevada Revised Statute ("NRS") Chapter 116 by recording a notice of

delinquent assessment in January 2014. In February 2014, the Association, through NAS, recorded

a notice of default and election to sell. Neither notice specified the superpriority amount of the

Association's lien, but the notices referenced the CC&Rs.

In March 2014, Hill filed for Chapter 13 bankruptcy in Utah, listing the property as an asset

in his schedules and in the Chapter 13 plan. But Hill did not list the Association as a creditor. The bankruptcy remained open until 2017, and neither the Association nor NAS moved for relief from the automatic stay.

While the bankruptcy was pending, the Association, through NAS, recorded a notice of trustee's sale in July 2014. The notice did not identify the superpriority amount of the Association's lien. Further, the notice of sale states that the "sale will be made without covenant or warranty, express or implied regarding, but not limited to, title or possession, or encumbrances, or obligations to satisfy any secured or unsecured liens." The Association sold the property to Hardy Way at a public auction on September 19, 2014 for $6,072.29.

The foreclosure deed states that the Association, through NAS, "grant[s] and convey[s], but without warranty express or implied," the property to Hardy Way.

## IV. DISPUTED FACTS

The parties do not dispute the facts, only the legal consequences of the facts.

## V. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).  It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage.  <u>Zetwick v. Cty. of Yolo</u>, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## VI.   DISCUSSION

The parties seek to determine whether the foreclosure sale extinguished the deed of trust held by Bank of New York Mellon.  Bank of New York Mellon contends that the sale could not have extinguished the deed of trust because: (1)  NRS Chapter 116 violates due process; (2) the sale violated the automatic stay imposed by the bankruptcy action; (3) the Association intended to foreclose on a subpriority lien only; and (4) the sale was inequitable given the inadequate sale price in conjunction with the unconstitutionality of the statutory scheme, the violation of the bankruptcy stay, and the representations in the CC&Rs.  The Court disagrees with each assertion, as explained in turn below, and finds that the deed of trust was extinguished as a result of the foreclosure sale.

### a.  Due Process

Bank of New York Mellon first asserts that NRS Chapter 116 violates the Due Process Clause of the U.S. Constitution as found by <u>Bourne Valley Court Trust v. Wells Fargo Bank, NA</u>, 832 F.3d 1154 (9th Cir. 2016).  The Court finds that NRS Chapter 116 does not facially violate the due process rights of the defendants despite the Ninth Circuit's decision in <u>Bourne Valley</u>, because NRS Chapter 116 incorporates the notice requirements of NRS Chapter 107. <u>SFR Invs. Pool 1, LLC v. Bank of New York Mellon</u>, 422 P.3d 1248, 1253 (Nev. 2018). Ninth Circuit construction of state law is only binding to the extent that there is no subsequent indication from the state court that the interpretation was incorrect. <u>Owen By & Through Owen v. United States</u>, 713 F.2d 1461, 1464 (9th Cir. 1983).  <u>SFR</u> was a subsequent state court decision indicating that

the Ninth Circuit's construction of NRS Chapter 116 was incorrect. The Ninth Circuit has recently confirmed that NRS 116 is not facially unconstitutional for this reason. See Bank of America, N.A. v. Arlington West Twilight Homeowner Association, 920 F.3d 620, 624 (9th Cir. 2019) ("In light of [SFR] . . . we conclude that Nev. Rev. Stat. § 116.3116 *et seq* is not facially unconstitutional on the basis of an impermissible opt-in notice scheme."). However, to the extent that Bourne Valley's finding that NRS Chapter 116 constitutes state action remains good law, the Court shall consider Defendants' remaining due process arguments.

Bank of New York Mellon next argues that the NRS Chapter 116 notices violate due process because the statutory scheme did not require homeowners' associations to clarify the amount of the superpriority component of the lien or explicitly state that the first deeds of trust were at risk. The Court has previously considered and dismissed these arguments. HSBC Bank USA, Nat'l Ass'n as Tr. for Deutsche Alt-A Sec. Inc. Mortg. Loan Tr. v. Underwood Partners, LLC, No. 2:17-cv-00461-RFB-PAL, 2019 WL 1342766, at *5 (D. Nev. Mar. 25, 2019). The Court dismisses the arguments here as well, finding no reason to deviate from its previous rulings.

### b. Bankruptcy Stay

Bank of New York Mellon next argues that the foreclosure must be set aside as void since it was conducted during the automatic stay imposed by the bankruptcy matter without the Association or NAS first seeking relief from the stay. But the Association does not have standing to challenge the sale as a violation of the automatic stay. See Bank of New York Mellon v. Pomeroy, No. 2:17-cv-00939-RFB-NJK, 2019 WL 1429612, at *4 (D. Nev. Mar. 30, 2019).

In a bankruptcy action, a petitioner creates a bankruptcy estate on the filing of the petition. In re Perl, 811 F.3d 1120, 1127 (9th Cir. 2016). The estate "includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" Id. (quoting

11 U.S.C. § 541(a)(1)).  The filing of the petition also imposes an "automatic stay of 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....'"  Id. (quoting 11 U.S.C. § 362(a)(3)).  Thus, "[t]he violation of the automatic stay inquiry determines whether the debtor, in isolation, has *any* protectable legal, equitable, or possessory interest."  Id. (emphasis in original) (holding the automatic stay was not violated because the petitioner had no protectable interest in the property since, prior to the filing of the petition, title to the property had been transferred, a state court had found against petitioner in an unlawful detainer action, and a state court had entered a writ of possession disfavoring petitioner).  Further, while actions that violate an automatic stay in a bankruptcy proceeding are void rather than merely voidable, In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992), only debtors and trustees have standing to challenge violations of an automatic stay.  See In re Franck, 19 F.3d 1440 (9th Cir. 1994); see also In re Pecan Groves of Arizona, 951 F.2d 242, 245 (9th Cir. 1991).

Bank of New York Mellon cites In re Popp, 323 B.R. 260 (B.A.P. 9th Cir. 2005) as a decision establishing its right to challenge the foreclosure sale.  But In re Pop is distinguishable.  In re Pop concerned adversary proceedings between parties to a bankruptcy action, a challenge to a property sale prior to the sale occurring, and a contested trustee's sale motion requesting authority to sell the property.  Here, Bank of New York Mellon attempts to undo a sale that has already occurred and that, on this record, was not challenged in the bankruptcy proceedings to which Bank of New York Mellon was not a party.  Thus, the Court finds In re Pecan Groves of Arizona controls and that Bank of New York Mellon does not have standing to challenge the foreclosure sale as a violation of the automatic bankruptcy stay because it was neither a party, a debtor, or a trustee in Hill's bankruptcy matter.

### c. Priority of the Lien

1    The Court also dismisses Bank of New York Mellon's argument that the Association

2    intended to foreclose on a subpriority lien as evidenced by the representations in the CC&Rs and

3    the lack of any reference to a superpriority lien in the recorded notices. The Court is not persuaded

4    by either point.

5        As to the first point, NRS 116.1104 states that provisions of NRS Chapter 116 "may not

6    be varied by agreement, and rights conferred by it may not be waived" absent express statutory

7    language to the contrary. Nev. Rev. Stat. § 116.1104.    NRS Chapter 116 does not expressly

8    provide that a declaration can set forth additional notice requirements that, unless satisfied, negate

9    the status of the superpriority portion of an homeowners association's lien or alter the application

10   of NRS 116.3116(2). Thus, the representations in the Association's CC&Rs, or its failure to abide

11   by the CC&Rs, is not a basis upon which Bank of New York Mellon may prevail. See Pomeroy,

12   2019 WL 1429612, at *6.

13       Likewise, the second point has no merit. As previously explained, NRS Chapter 116 did

14   not require the Association to explicitly state that the Association was foreclosing on a

15   superpriority lien or to provide the superpriority amount. Id.    The Court therefore finds that NRS

16   Chapter 116 applies unaltered and that the Association foreclosed on its superpriority lien as

17   outlined by the statutory scheme.

18

19                    **d. Commercial Reasonableness**

20       Finally, the Court denies Bank of New York Mellon's arguments that the sale was

21   commercially unreasonable. Bank of New York Mellon bases its argument that the sale was

22   commercially unreasonable on the sale violating due process, violating the bankruptcy stay, and

23   concerning a subpriority lien only. The Court dismissed each of these arguments above. The

24   Court therefore dismisses Bank of New York Mellon's commercial reasonableness argument

25   accordingly based on the reasoning in Underwood Partners, 2019 WL 1342766, at *6, which the

26

27   Court incorporates by reference.

28              **VII.    CONCLUSION**

1      **IT IS THEREFORE ORDERED** that 732 Hardy Way Trust's motion for summary

2 judgment (ECF No. 37) is GRANTED. The Court declares that the foreclosure sale extinguished

3 the deed of trust on the property and that 732 Hardy Way Trust purchased the property free and

4

5 clear of the deed of trust. The Court finds this declaration disposes of the remaining claims in this

6 matter and dismisses them accordingly.

7      **IT IS FURTHER ORDERED** that 732 Hardy Way Trust's motion to dismiss (ECF No.

8 34) is DENIED as moot.

9

10

11      **IT IS FURTHER ORDERED** that The Bank of New York Mellon's (ECF No. 38) motion

12 for summary judgment is DENIED.

13      **IT IS FURTHER ORDERED** that the lis pendens filed in this case is expunged.

14      **IT IS FURTHER ORDERED** that the Clerk of the Court is instructed to enter judgment

15 accordingly and close this case.

16

17      DATED: September 30, 2019.

18

19                               **RICHARD F. BOULWARE, II**

20                               **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27

28